11-6003.121-JCD                                                    May 10, 2012

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

In re MICHAEL A. PINK and          )
SHARON PORTER,                     )
                                   )       No. 11 C 6003
                                   )
                Debtors.           )


### MEMORANDUM OPINION

Before the court is the debtors' appeal from the bankruptcy court's order of July 11, 2011, which sustained the Trustee's objection to the debtors' claim of exemption and granted the Trustee's motion for turnover of the funds claimed as exempt. For the reasons explained below, the order of the bankruptcy court is affirmed.

### BACKGROUND

On October 26, 2010, Michael A. Pink and Sharon Porter (the "debtors") filed a joint voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On April 23, 2011, the debtors made certain amendments to two of their bankruptcy schedules and their statement of financial affairs. On Amended Schedule B, which requires debtors to list all of their personal property, the debtors disclosed, among other items, "[t]wo separate accounts held by Gilberto Arosomena [sic] for the benefit of Reira LLC," with a corresponding value of $139,000.00. (Notice of Appeal, Ex. 1, at

- 2 -

7.)  On Amended Schedule C, the debtors claimed the $139,000.00 as exempt from inclusion in the bankruptcy estate under 735 ILCS 5/12-1006(a), the exemption for retirement plans.  (Notice of Appeal, Ex. 1, at 9.)  The Trustee filed an objection to the exemption, and the parties briefed the issue.  After briefing, Bankruptcy Judge Goldgar issued an oral ruling holding that the funds were not exempt from inclusion in the bankruptcy estate and sustaining the Trustee's objection.  Judge Goldgar also granted the Trustee's motion for turnover of the funds in the accounts.  (App. to Appellee's Br., Tr. of Oral Ruling, July 11, 2011; Order of July 11, 2011).  The debtors appeal from the bankruptcy court's ruling.

The background facts, drawn from the parties' briefs, are not in dispute.  Until mid-2008, the debtors held traditional individual retirement accounts (IRAs) at Merrill Lynch.  On August 4, 2008, the debtors formed an Illinois limited liability company named Reira, LLC ("Reira").  Reira was established as a qualified self-directed IRA under section 408 of the Internal Revenue Code, 26 U.S.C. § 408.  Its Operating Agreement designated the debtors' IRA accounts as Reira members and Michael A. Pink as Manager. After forming Reira, the debtors rolled over their traditional Merrill Lynch IRAs into the bank accounts they had opened for Reira at Associated Bank.

About a year later, on August 20, 2009, the debtors directed a wire transfer of $380,000.00 from Reira's accounts at Associated

- 3 -

Bank to a Citibank account held by their attorney, Gilberto Arosemena, in Panama. The $380,000 was added to about $96,000 that Arosemena had previously been holding in an account for the debtors. For unknown reasons, Arosemena later transferred some of the funds to a second account that he held for the debtors. Arosemena referred to the two accounts respectively as "Funds Account for Real Estate Matters" and "Segregation of Estate No. 65266." (Notice of Appeal, Ex. 6.) On his ledgers for the accounts, Arosemena added the notation "Responsible: Michael A. Pink," but made no mention of Reira. (Notice of Appeal, Ex. 6.)

The transfer from Reira to the Arosemena accounts was intended to be used for a Panamanian real estate investment, but no real estate investment was ever made. Instead, between September 2009 and April 2010, the debtors at various times directed Arosemena to transfer funds back to their personal bank accounts to pay for living expenses. The transfers back to the debtors' personal accounts totaled about $336,000.00. A total of approximately $139,000.00 remained in the Arosemena accounts at the time the debtors filed their bankruptcy petition.

## DISCUSSION

This court sits as an appellate court for bankruptcy court proceedings. We review the bankruptcy court's factual findings for clear error and its conclusions of law de novo. See In re Smith, 286 F.3d 461, 464-65 (7th Cir. 2002). Mixed questions of law and

- 4 -

fact are reviewed de novo.  Freeland v. Enodis Corp., 540 F.3d 721,

729 (7th Cir. 2008).  A debtor's entitlement to a bankruptcy

exemption is a question of law that is reviewed de novo.  In re

Yonikus, 996 F.2d 866, 868 (7th Cir. 1993).

The issue for review is whether the debtors are entitled to an

exemption for the $139,000.00 in the Arosemena accounts.  The

Bankruptcy Code permits a debtor to remove from the bankrupt estate

certain property that is exempt from execution by creditors under

either state or federal law.  In re Thompson, 867 F.2d 416, 418

(7th Cir. 1989).  Section 522 of the Bankruptcy Code, 11 U.S.C. §

522, governs exemptions, and as permitted by § 522(b), Illinois has

"opted out" of the federal exemption scheme.  See 735 ILCS 5/12-

1201.  Therefore, Illinois residents, like the debtors here, may

claim only those exemptions that are available under Illinois law.

The debtors invoke section 12-1006 of the Illinois Code of Civil

Procedure, which provides in pertinent part:

> Exemption for retirement plans. (a) A debtor's interest
> in or right, whether vested or not, to the assets held in
> or to receive pensions, annuities, benefits,
> distributions, refunds of contributions, or other
> payments under a retirement plan is exempt from judgment,
> attachment, execution, distress for rent, and seizure for
> the satisfaction of debts if the plan (i) is intended in
> good faith to qualify as a retirement plan under
> applicable provisions of the Internal Revenue Code of
> 1986, as now or hereafter amended . . . .
>
> (b) "Retirement plan" includes the following:
>     (1) a stock bonus, pension, profit sharing,
>     annuity, or similar plan or arrangement, including
>     a retirement plan for self-employed individuals or
>     a simplified employee pension plan;

- 5 -

> . . . [and]
>      (3) an individual retirement annuity or individual
>      retirement account . . . .
> . . .
> (d) This Section applies to interests in retirement plans
> held by debtors subject to bankruptcy, judicial,
> administrative or other proceedings pending on or filed
> after August 30, 1989.

735 ILCS 5/12-1006.

The parties agree that § 12-1006 thus exempts assets that are held in an IRA such as Reira that satisfies the requirements of § 408 of the Internal Revenue Code. They disagree on whether it exempts assets that *at one time* were held in such an account but were removed from the account prior to the filing of a bankruptcy petition. Bankruptcy Judge Goldgar held that the exemption does not apply to these kinds of assets, focusing on the language of the statute and relying on Seventh Circuit case law. Judge Goldgar reasoned:

> [T]he language of section 12-1006 doesn't exempt assets of the debtor if those assets were once held in a tax-qualified IRA account but are no longer. The Seventh Circuit has noted that if funds are deposited into a retirement plan covered by Section 5/12-1006, then they are exempt from creditors' claims as long as they remain in that plan. In re Weinhoeft, 275 F.3d 604, 606 [(7th Cir.] 2001). What matters for exemption purposes isn't that the funds originated in a retirement plan, but that they are in the plan on the petition date. Id. Assets transferred out of a qualified retirement plan prepetition lose the exempt status they would otherwise have had under section 12-1006. Id. . . .
>      In this case, [the Trustee] doesn't dispute that Reira is, or was, a tax-qualified IRA under Section 408 of the Internal Revenue Code. But the debtors transferred the funds in question out of Reira's bank accounts and into Arosemena's account at Citibank on August 20, 2009, more than a year before the bankruptcy

- 6 -

case began. So even if the funds are still held by
Arosemena "for the benefit of Reira" as the debtors
assert, the funds are no longer being held by Reira
itself, nor were they on the date the debtors filed for
bankruptcy.
. . . [T]he debtors haven't even alleged, much less
shown, that Arosemena's account where the funds []
now reside is a tax-qualified IRA, nor does it seem likely.
. . . In the absence of some evidence from the debtors
that the funds in question were held in a tax-qualified
IRA account on the petition date, . . . [t]he funds held
in Arosemena's account aren't exempt but are property of
the debtors' estate and must be turned over to the
trustee for the benefit of creditors.

(App. to Appellee's Br., Tr. of Oral Ruling at 6-9.)

The debtors point out, correctly, that § 12-1006, like
exemption statutes generally, must be construed liberally to
further the purpose of affording debtors a fresh start. See, e.g.,
In re Smith, 640 F.2d 888, 891 (7th Cir. 1981); In re Ellis, 274
B.R. 782, 788 (Bankr. S.D. Ill. 2002). They assert that the "plain
language" of the statute exempts not only an interest in an IRA,
but a debtor's "right to receive" such funds. (Appellants' Br. at
11.) The debtors also argue that "funds derived from or traceable
to retirement funds are still exempt," Appellants' Br. at 13,
primarily citing decisions involving exemptions for funds
reasonably traceable to social security or workers' compensation
benefits.

We agree with Judge Goldgar's determination that the debtors
are not entitled to an exemption under § 12-1006 for the
$139,000.00 held in the Arosemena accounts. We begin with the
relevant statutory language, which the Seventh Circuit analyzed in

- 7 -

_Weinhoeft_ as follows: "Th[e] statute covers two kinds of entitlements: rights 'to the assets *held in*' pension plans, and rights to '*receive* pensions . . . *under* a retirement plan.'" 275 F.3d at 605.  Like the debtors in _Weinhoeft_, whom the Seventh Circuit concluded were not entitled to an exemption under § 12-1006, Mr. Pink and Ms. Porter do not claim rights to assets held in a retirement plan, nor do they claim an exemption for a right to receive a pension under a plan.  Instead, they claim a right to assets that were *once held in* a plan.  But the Seventh Circuit was very clear in _Weinhoeft_ that the statute does not exempt such funds:

> A pension trust is inalienable no matter how strong the creditor's equitable claim to the money, and funds *not* in pension trusts are alienable no matter how much the debtor would prefer to keep the value out of creditors' hands.  _The proof of this is the rule that as soon as funds are *withdrawn* from a plan, creditors can reach them freely._  See _Velis v. Kardanis_, 949 F.2d 78, 82 (3d Cir. 1991).  We see no reason why § 5/12-1006 should be construed to cover funds that are outside retirement plans. . . . It is not *origin* but *destination* that matters.  If settlement funds are deposited in a retirement plan covered by either ERISA or state law such as § 5/12-1006, then they are exempt from creditors' claims _as long as they remain in that plan._

275 F.3d at 606 (emphasis added).

We are unpersuaded by the debtors' argument that _Weinhoeft_ is inapplicable because the Weinhoefts claimed assets as exempt that were intended for a retirement plan but had never actually been deposited in the plan.  _Weinhoeft_ is not limited to its narrow

- 8 -

facts.  As is evident from the passage quoted above, the Seventh Circuit articulated broader, controlling principles regarding the interpretation of § 12-1006 and the inapplicability of the exemption to assets that are no longer held in a retirement plan.

The debtors' citation to decisions involving exemptions for social security and workers' compensation benefits is unavailing.[1] Those benefits are not protected by § 12-1006, but by different statutory exemptions that use different language.  The debtors' reliance on two other decisions, In re Ritter, 190 B.R. 323 (Bankr. N.D. Ill. 1995), and Auto Owners Insurance v. Berkshire, 588 N.E.2d 1230 (Ill. App. Ct. 1992), is also misplaced.  The funds at issue in Ritter were still held in a qualified retirement plan; the question was not whether funds that had been withdrawn from the account were eligible for the § 12-1006 exemption, but whether funds still in the account were eligible even though the debtor had made withdrawals from the account prior to reaching age 59½. Berkshire does not help the debtors because the court held that if funds held in the debtor's checking account were traceable to periodic pension distributions intended for current support, they were exempt under § 12-1006, but not if a lump-sum distribution of the debtor's interest in his pension plan had occurred.  588 N.E.2d at 1234.

_____

[1] Some of these decisions are also inapposite because they apply the law of jurisdictions other than Illinois.

- 9 -

The debtors emphasize that after they directed a number of transfers from the Arosemena accounts to their personal bank accounts, they "immediately reported" these transactions to the IRS as early withdrawals from an IRA, and they contend that their own tax treatment of these withdrawals supports the conclusion that the funds remaining in the Arosemena accounts were exempt. We find that the debtors' subsequent tax treatment of these transactions is irrelevant to the issue of whether the assets lost their § 12-1006 exemption when they were initially transferred out of a tax-qualified retirement plan.

The debtors cite no authority in support of their argument that funds "derived from or traceable to retirement funds," even if they are held outside of a qualified retirement plan and derived from a lump-sum distribution from a plan, are exempt under § 12-1006. Moreover, their position is contradicted by Weinhoeft, which teaches that it is the *destination* of the funds that matters. The destination of the funds--the Arosemena accounts--was not a tax-qualified plan. "[E]ven under a liberal construction, § 12-1006 cannot be extended to protect whatever a debtor unilaterally chooses to claim as intended for retirement purposes." Ellis, 274 B.R. at 788. We conclude that the Bankruptcy Court properly sustained the Trustee's objection to the debtors' claim of exemption and granted the Trustee's motion for turnover of the $139,000.00 in the Arosemena accounts.

- 10 -

## **CONCLUSION**

For the foregoing reasons, the bankruptcy court's order of July 11, 2011 is affirmed.


DATE:      May 10, 2012


ENTER:     _____

           John F. Grady, United States District Judge